UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VICTORIA LYNN CANTALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | FILE NO.: _____ |
| ) | |
| FLANIGAN'S ENTERPRISES, INC. ) | |
| OF GEORGIA d/b/a MARDI GRAS, ) | |
| and GREG PHIFER, in his individual ) | JURY TRIAL DEMANDED |
| capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## **COMPLAINT**

The Plaintiff, VICTORIA LYNN CANTALES (hereafter "Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against FLANIGAN'S ENTERPRISES, INC. of GEORGIA d/b/a Mardi Gras (hereafter "Flanigan's") and GREG PHIFER (hereafter "Phifer") (collectively referred to as "Mardi Gras" or "Defendants"), and shows this honorable Court as follows:

### **INTRODUCTION**

1. Plaintiff worked within the past three years for Mardi Gras as an adult entertainer.

2. Defendant Flanigan's owns and operates a strip club in Fulton County, Georgia known as "Mardi Gras."

3. Defendant Phifer is the chief executive officer, chief financial officer, and secretary of Defendant Flanigan's.

4. Mardi Gras misclassified Plaintiff as an independent contractor and failed to pay her the minimum wage and overtime wage for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereafter "FLSA").

5. Mardi Gras also required the Plaintiff to make certain payments, fees, and fines to Mardi Gras and its employees and others which caused her wages to drop below the minimum wage and applicable overtime wage, thereby constituting an unlawful "kickback" under the FLSA.

6. Mardi Gras required Plaintiff to contribute to an unlawful tip pool which caused Plaintiff's wages to drop below the minimum wage and applicable overtime wage.

7. As a result of Mardi Gras' violation of the FLSA, Plaintiff seeks unpaid minimum and overtime wages, including recovery of unlawful deductions as part of the wage loss, liquidated damages, interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216.

## PARTIES

8. Plaintiff is a resident of Marietta, Cobb County, Georgia, and by filing this action has consented to the jurisdiction and venue of this Court. Plaintiff was, at all times relevant to this action, an "employee" of Mardi Gras as defined by the FLSA at 29 U.S.C. § 203(e)(1).

9. Defendant Flanigan's is a Georgia for-profit corporation that owns and operates a strip club within this judicial district located at 6300 Powers Ferry Road NW, Sandy Springs, Georgia 30339 in Fulton County, Georgia, and may be served with process via its registered agent Cary Wiggins at 260 Peachtree Street NW, Suite 401, Atlanta, Georgia 30303. At all times mentioned herein, Defendant Flanigan's was an "employer" of Plaintiff within the meaning of the FLSA. 29 U.S.C. § 203(d) and (g).

10. Defendant Phifer is the CEO, CFO and secretary of Defendant Flanigan's, and may be served with process at his business address as listed on the Georgia Secretary of State's website at 6300 Powers Ferry Road NW, Sandy Springs, Georgia 30339. Defendant Phifer acted directly or indirectly on behalf of Defendant Flanigan's, and at all times mentioned herein, was an "employer" of Plaintiff within the meaning of the FLSA. 29 U.S.C. § 203(d) and (g).

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201 *et seq*.

12. Venue is proper in this district because all or a substantial portion of the events forming the basis of this action occurred in this district. Defendants' club is located in Fulton County, it is physically present in this district, and Plaintiff worked in this district.

## FACTUAL ALLEGATIONS

13. Plaintiff was employed as an entertainer by Defendants from 2017 to 2018.

14. Defendants misclassified Plaintiff as an independent contractor, failed to pay her any wage, and required her to pay to work for Defendants.

15. Defendant Phifer had operational control over Defendant Flanigan's, and made decisions affecting the employment and compensation of Plaintiff.

16. Specifically, Defendant Phifer made the decisions to: (i) misclassify Plaintiff as an independent contractor rather than an employee; (ii) not pay her the minimum and overtime wage as required by law; and (iii) establish and maintain a practice and policy of charging Plaintiff to work for Defendants.

17. At all times mentioned herein, Flanigan's was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA. 29 U.S.C. § 206 (a), and has at all times referenced herein had a gross annual revenue in excess of $500,000 per year.

18. Plaintiff performed entertainment services for Defendants such as dancing on stage, lap dancing, and VIP dancing for Defendants' customers.

19. Defendants paid Plaintiff no wages whatsoever for these services.

20. Instead, Plaintiff's only compensation was by way of tips/gratuities paid by Defendants' customers.

21. Defendants required Plaintiff to work certain scheduled shifts, and a certain number of hours during each shift.

22. Defendants fined Plaintiff for missing, or being late for a shift.

23. Defendants fined Plaintiff for leaving a shift early.

24. Defendants would not allow Plaintiff to leave the premises during her scheduled shifts without the permission of management.

25. Defendants or their managers monitored Plaintiff's dress and appearance at work.

26. Defendants and their managers had the authority to require Plaintiff to change her appearance and attire at work.

27. Defendants and their managers in fact required dancers to change their appearance and attire at work when they deemed it appropriate.

28. Defendants established and maintained rules, policies, and procedures governing entertainers at work.

29. Defendants' managers had the authority to suspend, discipline, and terminate entertainers for violation of its rules.

30. Entertainers were in fact suspended, disciplined and terminated for violation of Defendants' rules, policies, and procedures.

31. Defendants' managers, disc jockeys ("DJs") and "floor men" supervised Plaintiff on a day-to-day basis.

32. Defendants required Plaintiff to attend meetings.

33. Defendants used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, club promotional efforts, and other work-related issues.

34. Defendants paid all costs associated with operating the club's business, including but not limited to rent, upkeep and maintenance of the facility, utilities, furnishings, costs of food and drink and advertising marketing, and promoting the club's business.

35. Defendants invested significant sums to operate the Club.

36. Defendants' opportunity for profit and loss from operation of the club far exceeded any entertainers' (including Plaintiff's) opportunity for profit and loss from dancing at the club.

37. Defendants' marketing, promotional activities, advertising, and reputation resulted in customers' desire to frequent its club.

38. Defendants target, among other persons, customers from all over the metro Atlanta area by advertising nude dancing at the club.

39. Defendants required club customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the club as customers.

40. Defendants' managers had the discretion whether or not to allow a dancer, including Plaintiff, to perform.
41. Defendants required Plaintiff and each entertainer to dance on stage a certain number of sets per shift.
42. Defendants' various DJs called dancers to dance on stage on a set rotation established by Defendants or Defendants' DJs. These employees could "skip" Plaintiff in that rotation at their discretion.
43. Defendants' various DJs did, in fact, "skip" Plaintiff in the rotation as a means to punish her for various reasons including, but not limited to, not paying a sufficient "kick back" to the DJ from Plaintiff's tips.
44. Defendants' DJ or management decided which music to play in the club, and Plaintiff was required to dance to it.
45. Defendants determined where Plaintiff could dance and what she could charge for the dance.
46. Defendants exercised exclusive control over the amounts that Plaintiff could charge for private dances.
47. Defendants required Plaintiff to pay them various fees each shift from her tips.
48. Defendants required Plaintiff to pay fees to several of Defendants other employees each shift, such as DJs and "house moms."
49. Defendants imposed fines on Plaintiff for failing to appear at work, being late for work, missing a dance on stage, or leaving work early.

50. Some of the duties of Defendants' managers included ensuring that dancers (including Plaintiff) complied with Defendants' rules and policies.

51. Defendants provided all the equipment necessary for Plaintiff to earn a living at the club, such as stages used for dancer performances, poles used for dancing, sound systems, music, and lighting.

52. Plaintiff was economically dependent on Defendants for her income.

53. Defendants do not require their dancers to have prior experience as dancers or any formal or special training.

54. An entertainer such as Plaintiff was and is generally hired by Defendants based upon physical appearance and a willingness to disrobe for Defendants' customers.

55. Defendants advertised (and continue to advertise) their business by using pictures of scantily clad women.

56. The presence of nude dancers was and is integral to Defendants' business success.

57. In fact, Defendants could not operate their nude dancing club without nude dancers.

58. Plaintiff was at all times pertinent hereto a statutory "employee" of Defendants as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

59. Defendants were Plaintiff's statutory "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

60. Plaintiffs were not exempt from the minimum wage or overtime requirements of the FLSA.

61. Plaintiff typically worked multiple shifts per week while employed by Defendants. Each shift lasted at least seven hours and sometimes as many as nine hours.

62. Defendants paid Plaintiff no wages or other compensation whatsoever.

63. Defendants knew of the unlawfulness of or acted with reckless disregard to the lawfulness of their misclassification scheme.

64. Defendants have ignored the law or made no efforts to ascertain whether or not its misclassification scheme complied with the law.

65. This Court and other courts within the Eleventh Circuit have found similar misclassification schemes involving adult entertainers unlawful.[1]

66. Despite the clear legal precedent in this Circuit, Defendants continue to operate a club using the same or similar unlawful labor practices.

67. Upon information and belief, all the policies and practices established by the Defendants for dancers and described herein are still in place at the club. Upon information and belief, Defendants continue to operate unlawfully because it is more profitable for them to continue violating the law rather than comply with the law.

68. Upon information and belief, Defendants maintain incomplete records of time worked by each entertainer and the amount of deductions each entertainer was required to pay each workweek to work at the club.

69. Upon information and belief, Defendants' failure to maintain complete records of the time worked and amounts paid as fines, tips, gratuities, and service charges violate the record keeping requirements of 29 C.F.R. Part 516.

---

[1] *Clincy v. Galardi South Enter., Inc.*, 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011); *Stevenson v. Great American Dream, Inc.*, 2013 WL 6880921 (N.D.Ga. Dec. 31, 2013); *Berry v. Great American Dream, Inc.,* 2014 WL 5822691 (N.D.Ga. Nov. 10, 2014); *Vaughn v. Paradise Entm't Group, Inc.*, Case No. 14-CV-00914-SCJ, Doc. 190, (N.D.Ga. March 15, 2016); *Dean v. 1715 Northside Drive, Inc.*, No. 1:14-CV-03775-CAP, Doc. 102, (N.D.Ga. January 14, 2017); *Thompson v. 1715 Northside Drive*, No. 1:14-CV-390-RWS, at *11 (N.D.Ga. Mar. 30, 2015); *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997).

70. Defendants required (and still require) entertainers, including Plaintiff, to share their tips with the club unlawfully.

## **CLAIM FOR RELIEF**

### **COUNT I**
### **MINIMUM WAGE CLAIM**
### **(Claim for Violation of 29 U.S.C. § 206)**

71. Plaintiff incorporates by reference the allegations in Paragraphs 13-70 above and relies on them as if set forth fully herein.

72. Each Defendant is an "employer" of Plaintiff within the meaning of the FLSA. 29 U.S.C. § 203(d).

73. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce."

74. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

75. Defendants failed to pay Plaintiff the minimum wage for each hour worked in violation of 29 U.S.C. § 206.

76. Defendants required Plaintiff to pay for permits, pay tip outs to various employees as described herein, pay house fees and other expenses, and pay fees and fines related to their dancing, all of which caused Plaintiffs wages to drop below the minimum wage or applicable overtime wage.

77. The required payments were primarily or entirely for the benefit and convenience of Defendants.

78. Plaintiff is entitled to reimbursement for the hours worked and all unlawful deductions, fines, and fees pursuant to 29 U.S.C. § 216(b).

79. Based upon the conduct alleged herein, Defendants knowingly, intentionally, and willfully violated the FLSA by not paying Plaintiff the minimum wage under the FLSA.

80. Based upon the conduct alleged herein, Defendants knowingly, intentionally, and willfully charged to the Plaintiff illegal fines and fees, some or all of which Defendants required Plaintiff to pay directly to Defendants other employees.

81. Throughout the relevant period of this lawsuit, Defendants cannot establish that their conduct that gave rise to this action was in good faith and based on reasonable grounds.

82. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants all unpaid minimum wages and an equal amount in the form of liquidated damages, as well as recover fines and fees illegally charged to her by Defendants, together with reasonable attorneys' fees and costs of this action, including interest, pursuant to 29 U.S.C. § 216(b).

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Award Plaintiff judgment for wages at the minimum and overtime rate, as well as liquidated damages, interest and attorneys' fees as provided for under the FLSA;

(b) Award Plaintiff judgment for unpaid wages in the form of unlawful deductions, including but not limited to fines, permit fees, tip out fees, house fees and other expenses related to her job, as well as liquidated damages in an equal amount, interest and attorneys' fees as provided for under the FLSA;

(c) Award Plaintiff all costs of this action permissible under 29 U.S.C. § 216 and 28 U.S.C. § 1920, including expert fees;

(d) Grant Plaintiff a jury trial on all issues so triable; and

(e) Award Plaintiff such other and further relief as the Court may deem just and proper.

The undersigned counsel certifies that he complied with all local rules pertaining to format and font.

Respectfully submitted this 25th day of July, 2018.

**BEGNER & BEGNER, P.C.**

*/s/ Eric A. Coffelt*

Begner & Begner, P.C.      **ERIC A. COFFELT**
5180 Roswell Road      Georgia Bar No.: 252705
South Building, Suite 100
Atlanta, Georgia 30342      Counsel for Plaintiff
(404) 531 – 0103
(404) 531 – 0107 (*facsimile*)
*E-mail*: ecoffelt@begnerlaw.com